UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
--------------------------------------------------X

Christa McLaurin                              Case No.

                       Plaintiff,

v.

National Credit Systems, Inc.;
Ventron Management, LLC; and
East Perimeter Pointe Apartments, LP;

                       Defendants.
--------------------------------------------------X

# INTRODUCTION, JURISDICTION AND BACKGROUND FACTUAL INFORMATION

1. Plaintiff, Christa McLaurin, a United States Army disabled veteran, brings this lawsuit against National Credit Systems, Inc. ("National Credit"), Ventron Management, LLC ("Ventron") and East Perimeter Pointe Apartments, LP ("East Perimeter").

2. Plaintiff is a resident of North Carolina.

3. National Credit is a Georgia corporation with a registered agent of C T Corporation System, 289 S Culver St, Lawrenceville, GA, 30046-4805

4. Ventron is a Florida limited liability company whose registered agent is Scaljon, Michael, 2210 Sullivan Rd College Park, GA 30337.

5. East Perimeter is a Florida limited partnership whose registered agent is National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, GA, 30046-4805.

6. On information and belief, Scaljon is General Counsel at Ventron Management, LLC located at 2210 Sullivan Rd College Park, GA 30337.

7. Plaintiff signed a lease on January 15, 2016 for a monthly rent of $705 with Ventron as agent for East Perimeter at 2914 Treecrest Pkwy, Decatur, GA 30035. **See Exhibit A.**

8. Plaintiff provided a $200 security deposit to Ventron acting as the agent for East Perimeter.

9. Ventron acting as the agent for East Perimeter wrongfully kept the security deposit even though it was supposed to be returned because it failed to comply with OCGA 44-7-33, 44-7-34 and 44-7-35.

10.   After some extensions of the lease, Plaintiff's left the apartment with the consent of East Perimeter on July 12, 2017

11.   Plaintiff recently attempted and is attempting to purchase a house but because of Defendants' hindering actions, Plaintiff is unable to do so.

12.   At the time Plaintiff applied for a VA Home Loan, she was told that she was unable to do so because she had 2 judgments against her totaling $2,285 in favor of East Perimeter arising from her tenancy at East Perimeter.

13.   For each judgment, East Perimeter was represented by attorney Michael Scaljon.

14.   Soon after the tenancy ended, Plaintiff was also told that besides for the judgments, she owed additional money arising from her tenancy to a debt collector named National Credit in the amount of $2,293.

15.   The first judgment with a docket number of 16D80602 or 16D80802 was filed on 06/09/2016 in the amount of $1,097. **See Exhibit B**.

16.   Upon information and belief, shortly after the time that the judgment was entered, the judgment was paid in full.

17.   Upon information and belief, the judgment may have been satisfied by the non-profit organization United Way.

18.   Indeed, only if the judgment was paid would East Perimeter allow Plaintiff to remain in the apartment for more than a year after the judgment on June 9, 2016 was entered.

19.   In addition, because a writ of possession was entered on June 9, 2016 which terminated the tenancy, Plaintiff should no longer owe money arising from the lease from that point on.

20.   A satisfaction of judgment or similar document was not filed with the Court to show that this judgment was satisfied.

21.   The second judgment with a docket number of 17D15798 was filed on 07/06/2017 in the amount of $1,188. **See Exhibit C.**

22.   National Credit claimed that in addition to the $2,285 that Plaintiff owed in judgments she owed another $2,293.

23.   Plaintiff specifically asked National Credit whether the $2,293 was in addition to the $2,285 or separate from the $2,285.

24.   In other words, Plaintiff sought to determine whether she owed a total of $2,293 or a total of $4,578.

25.   National Credit stated that Plaintiff owed $4,578.

26.   In an attempt to collect the debt, National Credit provided Plaintiff with an itemization of the debt it knew or should have known was false.

27.   Upon information and belief, without any basis, National Credit created the

itemization.

28.   Alternatively, upon information and belief, East Perimeter directed National Credit to create the false itemization.

29.   In order to avoid litigation, Plaintiff mailed letters to the credit reporting agencies Equifax, Experian and Trans Union requesting the removal of the 2016 judgment and the National Credit tradeline. **See Exhibit D**.

30.   In order to avoid litigation, Plaintiff also mailed letters to National Credit at 2 different addresses, East Perimeter at 2 different addresses and to Scaljon. **See Exhibit D.**

31.   The addresses to which Plaintiff mailed the letters are on Exhibit D.

32.   Upon receiving the dispute, Equifax notified National Credit of Plaintiff's dispute along with all relevant information from the dispute.

33.   Equifax was required to notify National Credit of Plaintiff's dispute and to provide National Credit with all relevant information it received from Plaintiff.

34.   Equifax forwarded Plaintiff's documentation to National Credit, along with a description of Plaintiff's dispute, and asked National Credit to investigate Plaintiff's dispute

35.   Despite the trade line being false for the reasons explained in the letter,

National Credit confirmed that the account was correct, and Plaintiff owed the debt.

36.   As a result of the false National Credit tradeline, Plaintiff's credit score was adversely affected.

37.   Plaintiff was unable to purchase a home because of the false 2016 judgment and the National Credit tradeline.

38.   Plaintiff suffered emotional distress damages, including frustration, irritation and anxiety as a result of Defendants' conduct.

39.   Plaintiff suffered monetary damages because of the cost of postage of mailing the dispute letters to Experian.

40.   Plaintiff also suffered a loss of time dealing with her erroneous credit report.

41. This Court has jurisdiction under the venue provisions in the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") and supplemental jurisdiction over the state law claims.

42. Venue in this District is proper because a substantial part of the events giving rise to this lawsuit occurred within this district.

## **VIOLATIONS ALLEGED**

## **COUNT I – FCRA CLAIM AGAINST NATIONAL CREDIT**

43. National Credit violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), by failing to reasonably investigate Plaintiff's dispute when Equifax forwarded Plaintiff's dispute of its tradeline.

44. An investigation into Plaintiff's dispute would easily have disclosed that the tradeline should be removed.

45. National Credit failed to carry out its duties under 1681s-2(b) by failing to conduct an investigation into plaintiff's dispute.

46. National Credit failed to carry out its duties under 1681s-2(b) by failing to review all relevant information in plaintiff's dispute forwarded by Equifax.

47. Upon receiving Plaintiff's dispute from Equifax, National Credit merely notated that the account was a disputed account.

48. National Credit should have directed Equifax to delete the tradeline.

49. National Credit committed such violations willfully and negligently.

50. Plaintiff is entitled to actual, statutory and punitive damages pursuant to 15 U.S.C. §1681n and o.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against National Credit for:

(1) Appropriate actual, punitive and statutory damages;

(2) Litigation expenses, attorney's fees and costs of suit;

(3) Such other or further relief as the Court deems proper.

## **COUNT II – FDCPA CLAIM AGAINST NATIONAL CREDIT**

51. National Credit violated 1692e(8) by communicating information to Experian it knew or should have known was false.

52. National Credit violated 1692e(2)(A) by falsely stating the amount of the debt.

53. National Credit violated 1692f by attempting to collect amounts which are not permitted by the lease agreement and not permitted by law.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against National Credit for:

(a) Appropriate actual and statutory damages;

(b) Litigation expenses, attorney's fees and costs of suit;

(c) Such other or further relief as the Court deems proper

## **COUNT III– FAILURE TO FILE SATISFACTION OF JUDGMENT, OCGA 9-13-80 AGAINST VENTRON AND EAST PERIMETER**

54. East Perimeter, managed by Ventron, through its attorney Scaljon sued Plaintiff in 2016 and obtained a judgment.

55. The judgment was satisfied.

56. More than 60 days have passed since the judgment was satisfied but East

Perimeter, Ventron and Scaljon did not have a satisfaction filed.

57.     WHEREFORE, plaintiff requests that the Court enter
judgment in her favor and against Ventron and East Perimeter for:

(a)Appropriate actual and statutory damages;

(b)Litigation expenses, attorney's fees and costs of suit;

(c)Such other or further relief as the Court deems proper

## COUNT IV– BREACH OF CONTRACT AGAINST NATIONAL CREDIT,

## VENTRON AND EAST PERIMETER

58. Plaintiff entered into a lease agreement with Ventron and East Perimeter and

agreed to pay certain charges.

59. In addition to the charges that Plaintiff agreed to pay, Ventron and East

Perimeter through National Credit attempted to collect charges not owed in

the amount of $2,293.

60. Plaintiff was and is being damaged by the breach of contract in an amount not

less than $2,293.

WHEREFORE, plaintiff requests that the Court enter judgment in
her favor and against Defendants for:

(a)Appropriate actual damages;

(b)Litigation expenses, attorney's fees and costs of suit as stated in the lease
agreement;

(c)Such other or further relief as the Court deems proper

## COUNT V– FAILURE TO RETURN SECURITY DEPOSIT AND FAILURE TO PROVIDE LISTS AND WRITTEN STATEMENTS- OCGA 44-7-35 AGAINST VENTRON AND EAST PERIMETER

61. Ventron and East Perimeter failed to compile and make available to Plaintiff the final damage list required by subsection (b) of Code Section 44-7-33.

62. Ventron and East Perimeter failed to compile and make available to Plaintiff the final damage list required by subsection (b) of Code Section 44-7-33.

63. Ventron and East Perimeter failed to provide the lists and written statements within the time periods specified in Code Section 44-7-34.

64. Ventron and East Perimeter forfeited their rights to withhold any portion of the security deposit

65. Ventron and East Perimeter forfeited their rights to seek damages from Plaintiff under OCGA 44-7-35.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against Ventron and East Perimeter for:

(a)$600;

(b)Litigation expenses, attorney's fees and costs of suit;

(c)Such other or further relief as the Court deems proper

## COUNT VI– VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES OCGA 10-1-399 AGAINST VENTRON AND EAST PERIMETER

66. At least 30 days prior to the filing of this Complaint Plaintiff mailed to Ventron, National Credit and East Perimeter a letter identifying herself.

67. In that letter Plaintiff stated that Ventron and East Perimeter refused to file a satisfaction of judgment for the 2016 judgment even though it was satisfied.

68. In that letter Plaintiff stated that National Credit on behalf of Ventron and East Perimeter was attempting to collect amounts not owed, placing a false tradeline on her credit report and providing a false itemization of the debt.

69. Plaintiff also stated that the failure to file the satisfaction of judgment and the erroneous tradeline was preventing her from purchasing a home.

70. All Defendants knew or should have known that National Credit was attempting to collect a debt not owed.

71. Ventron and East Perimeter knew or should have known that that the 2016 judgment was satisfied but they still refused to file a satisfaction of judgment.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against Defendants for:

(a)Treble actual damages and punitive damages;

(b)Litigation expenses, attorney's fees and costs of suit;

(c)Such other or further relief as the Court deems proper

## **JURY TRIAL DEMAND**

Plaintiff demands a jury on all issues so triable.

Dated this 18th day of March 2021.

Respectfully submitted,

By: /s/ Shimshon Wexler
GA Bar No. 436163
S Wexler LLC
2244 Henderson Mill Rd, Ste 108
Atlanta, GA 30345
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com

# EXHIBIT A



| Apartment Rental Contract |
|---|

FORM VALID FOR
GEORGIA APARTMENT
ASSOCIATION
MEMBERS ONLY

This Apartment Rental Contract is a lease between the Owner of the Apartment Community and the Residents who are leasing the apartment.

The General Provisions of the lease which follow the signatures at the bottom of this page and any separate addenda signed by the parties are incorporated into and become part of this lease. Paragraph numbers on this page correspond to paragraph numbers in the General Provisions.

Lease Date: **January 15, 2016**
Management: **Ventron Management**
    ☐ Owner   ☒ Management Co. as Agent for Owner
Apartment Community Name: **East Perimeter Pointe Apts**
Apartment No.: **2914**
Apartment Address: **2914 Treecrest Pkwy, Decatur, GA 30035**
Residents/Tenants: **Christa Mclaurin**

Other Occupants of Apartment:

Par. 1.   Lease Term:   **12**   Months and     Days
    Beginning Date: **01/15/2016**     Ending Date: **01/14/2017**

Par. 3.   Rent Due Monthly   $ **705.00**
    Pro Rated Rent Due at Lease Signing $ **386.61**
    Dates of Prorated Rent **01/15/2016** to **01/31/2016**
    Month to Month Fee   $
    Rent is Payable to **East Perimeter Pointe Apartments**     (Name on Check or Money Order)

Par. 4.   Late Fees and Insufficient Funds Fees
    Date on Which Rent Is Late   **3**
    Amount of Late Fee   $ **100.00**   or     % of Rent
    Per Day Late Fee   $   per day after     day of the month
    Returned or Insufficient Check Fee ☒ Service Fee of $ **100.00**   or ☐ 5% of Amount of Check plus ☐ Bank Service Fee of
    [Amount charged by Bank to Management for Charge Back]

Par. 5.   Re-Key Lock Charge   $ **50.00**
    Non-refundable Lease Fee   $ **100.00**
    Security Deposit   $ **200.00**
    Bank Name   **PNC Bank**     (Where Security Deposit Kept)

Par. 6.   How Much Notice Required To Non-Renew Lease Prior To End of Initial Lease Term   **60**   Days
    Renewal Period   ☐ Month to Month (1 month at a time) Renewal   ☐ Bi-Monthly (2 months at a time) Renewal
    Notice Required to End Renewal Period ☐ 30 days to end Month to Month Renewal   ☐ 60 days to end Bi-Monthly Renewal

Par. 7.   Early Termination Option: Amount of Notice Required for Electing Early Termination   **60**   Days Written Notice

Par. 9.   Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy
    Name of Managing Agent for Owner   **East Perimeter Pointe Apts.**
    Address of Agent Authorized to Manage Apartment Community   **4946 Snapfinger Woods Drive Decatur, Ga. 30035**
    Name of Owner or Registered Agent Authorized to Receive Notices and Lawsuits   **East Perimeter Pointe Apts.**
    Address of Owner or Registered Agent Authorized to Receive Notices and Lawsuits   **4946 Snapfinger Woods Drive Decatur, Ga. 30035**
    Corporate Name of GREC Licensee
    GREC Corporate License No.

Par. 17.   Flood Disclosure   ☒ Not Applicable   ☐ Apartment has been flooded previously

Par. 34.   Special Stipulations:

Signatures of Parties:
Management

_____
Name of Management

By: _____
Signature of Management Representative Name

As: _____ (Job Title)

Residents

_Christa M_____ (Resident Signature)
Printed Name of Resident:

_Christa Mclaurin_____ (Resident Signature)
Printed Name of Resident:

_____ (Resident Signature)
Printed Name of Resident:

_____ (Resident Signature)
Printed Name of Resident:

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

GENERAL PROVISIONS FOLLOW     **011520160081101**     Page 1 of 8

General Lease Provisions.

The Owner is the landlord of the property, and the Resident is the tenant. The apartment community is managed for the Owner by its Managing Agent.

The lease is legally effective on the date it is signed, regardless of whether it was signed before or after the Resident moves into the apartment. There is no conditional three day right to rescind or void the contract once it is signed, and the Resident is legally bound to pay all rent, fees, and other charges that come due, regardless of whether the Resident continues to occupy the apartment. The Lease Date is the day on which the lease was signed and became effective as a contract.

The lease is a legally binding contract that creates the relationship of landlord and tenant for the full duration of the lease term at the rental rate stated above. Any addenda signed by the Owner and Resident are also part of this Apartment Rental Contract.

The Owner provides the apartment to the Resident in exchange for payment of monthly rent. The Resident's obligation to pay rent is independent of any other obligation of Landlord in the lease.

Listed above are important terms, conditions, and payment amounts. They are listed at the beginning of the lease to provide the parties with an easy reference. Each of the first page terms correspond to important lease provisions that follow below. Paragraph references on the first page correspond to the paragraph number of the General lease provisions that follow.

Important Information About Ending The Lease and Management's Right to Increase the Rent During Any Extension Period. This lease does not end automatically at the end of the initial lease term. The Resident must give a proper non-renewal notice to end the lease as provided in Par. 6, or the lease will be extended or renewed for an additional period of time stated in Par. 6. The lease continues to renew until the proper non-renewal notice is given. If the lease is renewed or extended, the Resident will be responsible for paying an additional Month-to-Month Fee and may also pay a higher rent than the rent specified in Par. 3, if Management gives notice of the higher rent amount.

The apartment shall only be occupied by Residents and the occupants listed on page 1, and any other occupants not listed above are unauthorized to live in the apartment.

1.    Term.  The initial lease term of the lease is for the number of months and days specified in Par. 1. The initial term of the lease begins and ends at noon on the days specified in Par. 1 but will be automatically renewed on either a month to month or bi-monthly basis as stated in Par. 6. RESIDENT MAY NOT TERMINATE THIS LEASE PRIOR TO THE END OF THE INITIAL TERM EXCEPT IN STRICT COMPLIANCE WITH PARAGRAPH 7 or as otherwise provided by law.

2.    Possession.  Rent shall abate until possession is granted to Resident. Resident may void or rescind this lease if possession is not granted within seven (7) days from the start of the lease term. Management is not liable for any delay in possession. Resident shall give Management written notice of his or her election to void or rescind the contract.

3.    Rent.  Resident shall pay rent in advance on the 1st day of each month at the management office as provided in Par. 3. The first month's prorated rent shall be due at the time this lease is signed as provided in Par. 3. If this lease is extended or renewed under Paragraph 6 without signing a new lease, Resident shall owe a month-to-month fee in addition to the monthly rent due during any extension or renewal period.

CASH PAYMENTS WILL NOT BE ACCEPTED, AND NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO ACCEPT A CASH PAYMENT UNDER ANY CIRCUMSTANCES. RESIDENT MAY NOT RELY ON ANY STATEMENT MADE TO HIM BY A MANAGEMENT RESPRESENTATIVE THAT CASH WILL BE ACCEPTED.

All rent shall be paid by personal check, cashier's check, or money order. Management shall have the right to establish or provide for payment by credit card, debit card, electronic funds transfer, online payment portal, or designated online payment system and software, but Resident does not have the right to make payments by these means unless specifically authorized by Management. Management shall have the right to designate the specific manner or form of payment that will be accepted, and no other form of payment shall be acceptable than those specified by Management. Checks and money orders shall be made payable to the order of the business entity specified in Par. 3. Third party checks (those which are made payable to someone other than Management) and partial payments are not allowed. All other damages, utilities, fees, or charges owed by Resident and due under this lease are considered to be additional rent.

The amount of rent specified in Par. 3 is the amount due each month unless Management has given the Resident a rental concession or discount from the rent, either in the Special Stipulations to this lease or in a separate addendum. If there are rental concessions granted, the Resident will or may lose them if in default or breach of this lease and will be obligated to pay the full amount of rent specified in Par. 3. If in default or breach of the lease, the Resident may have to repay the rental concessions under certain specified conditions.

4.    Late Payments and Checks with Insufficient Funds.  Time is of the essence. After close of business on the last day of the grace period specified in Par. 4, late fees shall be due in the amount specified.

Resident shall pay Management an insufficient funds check service for each returned or NSF check, plus an additional fee equal to the fee charged to Management by the bank. If no box is checked in Par. 4 that specifies the amount of the service fee, then the insufficient funds service fee is five per cent (5%) of the face amount of the check, plus the fee charged by the bank. At Management's option, all late rent, NSF checks, and future rents due after an NSF check must be paid by money order or certified funds from a bank. The parties agree that bank service, NSF, and late fees are reasonable compensation for delay, administrative costs, and time in collecting past due rent, are not penalties, and that such costs are difficult to estimate accurately.

5.    Lease Fees & Security Deposit.  Resident must pay the amounts specified in Par. 5 for re-keying locks, any non-refundable lease fees, or security deposits. A re-keying lock fee is due for each lock that must be re-keyed if all keys are not returned. The non-refundable lease fee is not a security deposit, is not refundable, and does not reduce Resident's liability for unpaid rent, damages exceeding normal wear and tear, or other charges that come due under the lease. Any security deposit will be refunded as provided by law but may be applied to any charges due under this lease. The deposit will either be protected by a surety bond on file with the Clerk of Superior Court or deposited in the bank specified in Par. 5. Interest earned on such deposits belongs to Management.

Management shall have the right to apply any security deposit held to money or a debt owed by the Resident to Management. Management is not restricted to or limited in how the security deposit is applied if money is owed, and the deposit may applied to rent, damages exceeding normal wear and tear, unpaid utilities, or any other fee, charge, or debt owed by Resident. Management may apply a pet or animal deposit to unpaid rent or damages exceeding normal wear and tear that were not caused by a pet or animal.

Resident shall have no right to use or designate a security deposit as payment of rent or other fees and charges which are due, as provided by O.C.G.A. 44-7-33(b). Resident agrees to cooperate with Management in scheduling and performing Move-In and Move-Out Inspections and noting any existing damages or objecting to Management's list of damages exceeding normal wear and tear.

6.    Renewal Term and Notice of Non-Renewal to End the Lease. Either party may non-renew and terminate this lease at the end of the initial term by giving a written non-renewal notice prior to the end of the initial lease term. If such non-renewal notice is not given, this lease will be extended as provided in Par. 6 on a either a Month-to-Month basis (one month at a time) until either party gives a proper 30 day notice; or on a Bi-Monthly basis (two

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

011520160081102                    Page 2 of 8

months at a time) until either party gives a proper 60 day notice in writing that terminates the lease. Unless otherwise allowed by Landlord, the lease shall terminate at the end of a calendar month.

Management shall have the right to increase the rent due in any extension or renewal term by giving written notice at least 15 days prior to the date on which a non-renewal notice must be given in order to end the initial term or any subsequent renewal or extension period.

If not specified in Par. 6, then a 30 day written notice is required to end the initial term or any renewal or extension period as of the end of a calendar month.

Management employees are not authorized to accept a verbal notice of non-renewal or termination from the Resident, and the Resident has no right to rely on a Management employee's statement that a verbal notice is acceptable. Resident's non-renewal or termination notice must be in writing, dated, signed, and specify the move-out date. Resident should confirm Management's receipt of the notice with the authorized signature of a Management representative using Management's notice of intent to vacate form. Resident should keep a signed receipt of the non-renewal notice for his personal records in case of any dispute as to whether such notice was given and received. If Resident does not obtain a signed receipt of such notice from Management, or if Management does not have a signed original non-renewal notice from Resident, then it will be presumed that Resident failed to give a proper written notice.

7.    Resident's Early Termination Option. Resident can end all liability for rent under this lease (but not liability for damages exceeding normal wear and tear, or liability for unpaid utilities) and vacate before the end of the initial lease term stated in Par. 7 only by doing all of the following things required in this paragraph. If all of the following conditions are not performed, then the lease remains in effect for the full term, and Resident shall be liable for breach of the rental agreement as provided in Paragraph 26. If Resident skips, abandons, or is evicted from the apartment without complying with this paragraph, then Resident is in default and responsible for rent and liquidated damages (if applicable) as provided under Paragraph 26, any other fees or charges due, and all damages and cleaning fees in excess of normal wear and tear. Management employees are not authorized to make a verbal statement that waives the notice and termination fees, and the Resident has no right to rely on a Management employee's statement that Resident will not have to pay such fees or comply with this provision in order to terminate the lease early. Any waiver of the notice or fees required under this provision must be in writing, dated, and signed by all parties. Resident's election to use or not use this provision is purely voluntary.

To end the lease early, Resident MUST do EACH of the following: 1) pay all monies currently due; 2) give written notice in the amount specified in Par. 7 of intent to vacate prior to the first day of the month and to take effect as of the last day of a calendar month; 3) pay all rent due through the notice period preceding the early termination date; 4) pay an additional early termination or lease cancellation fee equal to one month's rent as liquidated damages; vacate the leased premises on or before the specified termination date, remove all occupants and possessions, and physically hand the keys to a Management representative; and 5) abandon, waive, and release a claim to the return of any security deposit, which shall become Management's.

If the length of the Early Termination notice is not specified in Par. 7 on the first page, then a 30 day written notice is required. Resident can move-out earlier than the termination date following the notice period in Par. 7, but Resident must turn in all keys, remove all occupants and personal property, pay all rent due through the required non-renewal notice period, pay the one-month termination or lease cancellation fee, and comply with all other requirements. Keys must be physically handed to a representative of Management and may not be left in the apartment or a night rent drop box.

If Resident elects to exercise his or her right to Early Termination, Resident is not entitled to a refund of any rent, notice or termination fees, or security deposit, even if the apartment is re-let to a new Resident prior to the end of the notice period. Resident's election to exercise this early termination option either by giving proper notice and paying all sums due or by giving proper notice and signing an agreement to terminate early and pay the sums due at a later date are binding and shall not be reduced or set-off by any money or rent Management receives from re-letting the apartment to a new or subsequent Resident.

Military Transfers and Lease Terminations. A Resident (including a Resident's spouse) who is a service member on active duty or is called to active duty in the regular or reserve component of the U.S. Armed Forces, U.S. Coast Guard, or National Guard, shall have the right to end this Apartment Rental Contract early by giving a 30 day written notice, paying all rent due through the notice date, and providing a copy of the official military orders or written verification signed by the service member's commanding officer or by providing base housing orders as provided in O.C.G.A. Section 44-7-22, if the service member is:

1.    Ordered to federal duty for a period of 90 days or longer;
2.    Receives a permanent change of station orders to move at least 35 miles away from the rental housing;
3.    Is released from active duty after leasing housing and must move 35 miles or more away from the service member's home of record prior to entering active duty;
4.    After entering into this rental agreement, the service member becomes eligible to live in government quarters or the failure to move to government quarters will result in a forfeiture of the service member's basic allowance for housing;
5.    Receives temporary duty orders or temporary change of station orders or state active duty orders for a period exceeding 60 days that is at least 35 miles away from the location of the rental housing; or
6.    Receives orders after signing the lease but before taking possession of the rental housing.

8.    No Assignment/Subletting.    Resident may not sublet or assign the lease.

9.    Disclosure Notice of Owner or Managing Agent and Equal Housing Opportunity Policy.

The name and address of company or party authorized to manage the apartment community for the owner is specified in Par. 9. The name and address of the owner or owner's registered agent who is authorized to receive notices and lawsuits against the Landlord is specified in Par. 9. Lawsuits filed against the owner or Management shall be filed and served as provided by law or as contractually agreed to by Resident.

The Corporate Broker's Name of the Licensed Managing Agent and Broker's license number as required by the rules of the Georgia Real Estate Commission (Ga.R. & Reg. 520-1-.10) is specified in Par. 9.

Equal Housing Opportunity Policy. The apartment owner and Management provide equal housing opportunity for qualified applicants and do not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other legally recognized status in the State of Georgia. It is the owner's and Management's policy to provide reasonable accommodations in the apartment community's operational policies and procedures and to permit the Resident to make reasonable modifications that are necessary for the Resident and related to the disability for persons with a demonstrated disability. The Resident must request and obtain permission from the owner or management for any accommodation or modification prior to implementing the same. In general, the cost or expense of physical modifications to the apartment or apartment community is the responsibility of the Resident, unless the applicable law requires the owner or Management to absorb or be responsible for the cost of such modifications. A Resident or occupant with a demonstrated disability is allowed to have an assistance animal to assist with the person's disability. A disabled Resident or occupant is allowed to have an assistance animal which has not been trained as a service animal unless the animal has a history of dangerous, vicious, or unsafe behavior. If the nature of the disability is not obvious or apparent or the manner in which the animal will provide assistance is not clear, Management has the right to request additional information regarding how the animal will assist with the resident's disability. The Resident does not have an absolute right to the specific accommodation or modification requested, and Management has the right to offer an substitute or alternate accommodation or modification with conditions that will provide adequate assurance for the safety, health, and well being of other Residents, occupants, social guests, invitees, and

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

011520160081103

Management employees.  No Additional Rent, Non-refundable Fee, or Animal Security Deposit is required from Residents or occupants who are disabled and have an approved service or assistance animal; however, the Resident is responsible for any and all damages and cleaning fees exceeding normal wear and tear caused by such animal.

10.    Utilities Are Resident's Responsibility.    Resident is responsible for payment of all natural gas, electricity, water and sewer, telephone, cable, satellite or other utilities and services to the apartment unless specified otherwise in Paragraph 34 or in a utility addendum which is made a part of this lease.  Resident gives Management the right to select any utility provider and change the same without notice.  Resident shall promptly establish all utility and service accounts to be paid by Resident in his name at the start of the lease and shall not allow water and sewer, electricity, or natural gas to be shut off or billed to Management.  Resident shall promptly pay any billing for utilities or other services charged to Management upon notification.  Resident's failure to pay all utility services or to establish an account with a utility provider is a material breach of the lease for which Management has the right to terminate the right of occupancy or lease.

**          Important Disclosure Regarding Management's Right to Select the Natural Gas Marketer (Provider).  Resident (the Tenant) authorizes Management (the Landlord) to act as Resident's agent for the limited purpose of selecting the Resident's natural gas marketer, to authorize the natural gas marketer to obtain credit information on the Resident, if required by the marketer, and to enroll the Resident on the marketer's standard variable price plan for which the Resident is eligible, unless the Resident chooses another price plan for which he or she is eligible.  Resident acknowledges that Management may have a business relationship with the natural gas marketer that may provide for a financial or other benefit to Management in exchange for the Resident's enrollment with the Marketer.

11.    Fire and Other Casualty.    This lease will end if the apartment is uninhabitable due to fire as long as the fire was not caused by or the responsibility of Resident or Resident's occupants, family, or social guests.  If Resident or his occupants, family, or social guests were responsible for the fire and the premises are uninhabitable, then Resident must vacate the apartment and will still remain liable for the rent and utilities.

Management shall have the right to terminate the occupancy or lease of Resident if Resident or Resident's occupants, family, social guests, or invitees caused or were responsible for causing a fire to the apartment or any portion of the apartment community.  Resident has no right to transfer to another apartment in the community or to remain in the apartment community if Resident or Resident's occupants, family, social guests, or invitees were responsible for or caused the fire.  Resident may be eligible for transfer to another apartment in the apartment community if the Resident is qualified, there is a suitable apartment available, and Resident or Resident's occupants, family, social guests, and invitees did not cause the fire.

Resident is responsible for the cost of repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged by a fire which Resident or Resident's occupants, family, social guests, or invitees caused.  Resident is liable to and shall indemnify, defend and hold harmless Management and the owner for any damages or repairs caused by a fire which was caused by Resident or Resident's occupants, family, social guests, and invitees.

This lease shall end if the premises are destroyed or otherwise rendered uninhabitable due to an Act of God or any other catastrophic event or casualty that was not the responsibility of Resident or Resident's occupants, family, social guests, or invitees.

The Resident shall not continue to occupy an apartment which is rendered uninhabitable due to fire, Act of God, or other catastrophic casualty and must remove all personal property and return possession to Management.

12.    Hold Over/Trespass.    Resident must promptly vacate the apartment and deliver possession and all keys to Management upon any termination or non-renewal of this lease. Keys must be physically handed to a representative of Management and may not be left in the apartment or in the overnight rent drop box at the Management office.  The apartment must be delivered to Management in clean condition and good repair.

If Resident does not vacate the premises and return possession to Management after termination, non-renewal, or expiration of the lease, then  Resident shall pay to Management rent at two (2) times the current rental rate for each day held over past the termination date.

After termination, non-renewal, or expiration of the lease, Resident is a tenant at sufferance.

After vacating the premises based on non-renewal, termination, eviction, or upon receiving a criminal trespass notice under O.C.G.A. § 16-7-21 from Management, Resident shall not return to any portion of the apartment community.  Resident shall not permit entry of any person as his social guest or invitee if notified that his guest's or visitor's presence in the apartment community is subject to criminal trespass under O.C.G.A. § 16-7-21.  Management may terminate the lease or right of possession of any Resident who allows an unauthorized person access to his apartment or the community in violation of this provision or paragraph 14.  Management's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's right of occupancy of the apartment.

13.    Right of Access.    Management may enter the apartment without notice during reasonable hours to inspect, maintain, and repair the premises.  Management may enter the apartment at any time without notice to prevent injury or damage to persons or property.  Resident authorizes Management to show the apartment to prospective Residents once Resident has given or received a notice of non-renewal or termination.

14.    Resident's  Use of the Apartment and Conduct.    Resident shall use the apartment and apartment community only for residential purposes and not for business or commercial purposes.

Resident, all occupants, and Resident's family, social guests, and invitees must comply with all laws.  No portion of the apartment or apartment community shall be used by Resident or Resident's occupants, family, social guests, or invitees for any disorderly, disruptive, abusive, or unlawful purpose, nor shall they be used so as to disrupt the quiet enjoyment of any other Resident or their occupants, family, and social guests.  Resident and Resident's occupants, family, social guests, and invitees shall not commit any crime in the apartment community.

Resident is liable for the conduct of and for any damages exceeding normal wear and tear caused by his family, occupants, social guests, and invitees.  Resident shall not allow his occupants, family, social guests, and invitees to commit a crime or violation of the lease and addenda and must take affirmative, corrective action and notify Management of any such violation or misconduct.

The sale, manufacture, distribution, or possession of any illegal drugs in the apartment community is prohibited.

Resident must maintain the apartment in a clean and sanitary condition and must not cause or allow any damages exceeding normal wear and tear or infestation of vermin, insects, rodents, or other pests.  Noxious or offensive smells are not permitted, and Resident shall be liable for damages exceeding normal wear and tear for the repair or replacement of any carpet, flooring, ceiling, or walls that are permeated with noxious or offensive odors, water, or mold.   Resident shall not leave or dispose of trash, garbage, or other materials in hallways, breezeways, patios, balconies, or common areas of any portion of the apartment building or community.  Resident shall promptly take trash, garbage, or refuse to the proper dumpster, compactor, or trash collection area and properly dispose of organic and inorganic material as provided by law and as provided by the community rules.

Resident and Resident's occupants, family, social guests, and invitees shall abide by and follow all community rules and regulations.

Management shall have the right to prohibit smoking of cigarettes, pipes, cigars, or tobacco inside the apartment or any portion of the apartment community property under its community rules and regulations.  Smoking of tobacco products in the apartment is prohibited unless expressly authorized and allowed by the community rules and regulations.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

Resident shall operate all motor vehicles in a safe and lawful manner in the apartment community.  Resident shall not violate any parking rules and regulations and shall not exceed 15 mph in any parking lot, street, exit, or entrance of the apartment community.  Resident must park only in  authorized spaces and places and shall not park at any place that obstructs traffic, is unsafe, or is prohibited.  Resident shall not operate, park, or store, any  illegal, unauthorized, or uninsured motor vehicle or equipment on any portion of the apartment community.  Resident shall not abandon a motor vehicle in the apartment community.

Resident shall not store, keep, or dispose of any substance or material on any portion of the apartment community that is hazardous to the health,  safety, or welfare of any person.  Resident shall not dispose of any batteries, chemicals, environmentally hazardous, or unsafe material in any trash  receptacle, dumpster, compactor, or any portion of the apartment community.

Resident, and Resident's occupants, family, social guests and invitees, shall act and communicate with the apartment owner, Management,  Management employees, Residents, business social guests of Management, and all other persons in a lawful, courteous, and reasonable manner.  Any form of  verbally or physically abusive, intimidating, or aggressive behavior directed at the apartment owner, Management, Management employees, or any other person is prohibited.  Resident, his social guests and occupants shall not interfere with the daily business operations of the apartment community or job duties  of Management or its employees.  When notified by Management, Resident shall be prohibited from entering or contacting any Management or  corporate office or employee and must conduct all further communications in writing.

Resident shall not distribute petitions, flyers, or solicitation notices to other Residents in any manner other than through lawful use of the United States  mail. Resident is prohibited from committing business libel or slander or making untruthful, unfair, or misleading statements to others about the apartment  owner, Management, Management employees, or the apartment community.

Resident shall not commit waste to the apartment or apartment community and shall not commit any act nor fail to take any action that would endanger  the life, health, safety, welfare or property of any other person in the apartment community.  Resident must allow Management and vendors access to the apartment for the purpose of making repairs, performing service or maintenance, inspecting, and taking all other action related to the ongoing  business operation of the apartment community.

Resident shall not cause or allow an infestation of bed bugs in the apartment.  Resident shall not bring abandoned or discarded furniture,  clothing, bedding, or other personal property into the apartment as it could introduce an infestation of pests and bed bugs.

Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the apartment or apartment community.   Resident and Resident's occupants, family, social guests, and invitees shall not touch, damage, or trigger any automatic sprinkler head.

Resident and occupants shall not use the internet or cyberspace in any manner to disparage, defame, or injure the business or business reputation of the apartment owner or Management.  Resident and occupants shall not use, misuse, or appropriate the use of the owner's or Management's  corporate names, logos, slogans, images, photos, internet domain names, service marks, trademarks, copyrights, or trade names.  Resident and occupants shall not publish, misuse, or use any photos or video of Management employees or the apartment community or signage.  Owner and Management shall be  entitled to injunctive relief and damages for compensation to prevent any unauthorized publication, use or misuse, whether in part or in whole, of the  corporate name, trade name, internet domain name, likeness or identity of owner or Management. Resident and occupants shall not make, post, or  publish misleading, deceptive, untruthful, groundless, false, or unfair statements or commentary about the apartment community, the Management employees,  the owner, or Management on or to any internet website or domain, internet blog, internet social media, newspaper, magazine, television, radio, or other  news or social media. Resident is prohibited from making, publishing, stating, or posting any statement or communication that, while partially true, lacks or  fails to disclose other material facts in such a way such as to mislead the listener, viewer, or reader. Management shall be entitled to terminate the right  of occupancy or lease of any Resident or occupant who violates any portion of this Use and Conduct provision.

Resident and Resident's occupants, family, social guests, and invitees shall not store, use, or discharge any fireworks or consumer fireworks in the apartment or apartment community.  Fireworks are defined as any combustible or explosive composition or any substance or combination of  substances or article prepared for the purpose of producing a visible or audible effect by combustion, explosion, deflagration, detonation, including but not limited  to, blank cartridges, firecrackers, torpedoes, skyrockets, bombs, sparklers, roman candles and other combustibles and explosives of like construction.

Violation of this Resident's Use and Conduct provision is a material breach of this lease and constitutes a ground for terminating Resident's lease or right of possession, and Resident will be liable for any rent due through the remainder of the lease or liquidated damages (if applicable) as provided in  Paragraph 26.

15.   Property Loss, Insurance, and Crime.  Management and the apartment owner shall not be liable for damage, theft, vandalism, or other loss of  any kind to Resident's or his occupant's personal property, unless such is due to Management's negligence or intentional misconduct.  Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties.

Resident must purchase a renter's insurance policy that provides liability insurance for negligent or accidental acts and omissions for which the  Resident may be liable in causing injury or damage to the owner, Management, or others.

Resident should purchase property insurance for loss of or damage to Resident's own personal property.  Management is not liable for any loss  or damages to Resident's personal property due to theft, vandalism, bursting or leaking pipes, fire, windstorm, hail, flooding, rain, lightening,  tornadoes, hurricanes, water leakage, snow, ice, running water, or overflow of water or sewage. Management shall not be liable for any injury or damage caused  by such occurrences, and Resident agrees to look solely to his insurance carrier for reimbursement of his losses for such events.

Management does not market, advertise, represent, offer, or provide security or law enforcement services which will prevent crime or protect Resident  or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or  from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for  police, emergency, fire , security, or protection services.

Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is  not liable to Resident for the criminal acts of other persons.  Resident agrees that he or she will not and cannot rely on the existence or absence of  security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their  personal safety at all times. Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to  crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.

16.   Lead Based Paint Notification  (LBPN).  If this apartment community was built prior to 1978, the LBPN addendum is incorporated by reference.

17.   Flood Disclosure.  Management states that the apartment has not been damaged in any manner by flooding as defined in O.C.G.A. § 44-7-20 in  3 of the last 5 years unless noted otherwise in Par. 17.

18.   Pets.  No animals or pets of any kind are permitted without a Pet, Service, or Assistive Animal Addendum.  Management may enter the apartment  at any time and remove any pet or animal which Management believes to be neglected, distressed, or endangered.  Resident shall be liable for all costs of retrieving, caring for, and boarding of any pet or animal that is abandoned by Resident or removed by Management.  Resident releases Management from

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

liability of any kind when Management acts to retrieve or protect Resident's pets and animals which appear to be neglected, distressed, or endangered. Please see Par. 9 with respect to Management's policy on service, assistive and convenience animals for person with disabilities.

19.     Indemnification.     Resident agrees to indemnify, defend, and hold harmless the apartment owner and Management for any loss the  apartment owner or Management incur due to Resident's breach of this agreement or due to the acts and omissions of Resident and Resident's occupants,  family, social guests, or invitees.

20.     Failure to Act.   Management has the right to insist on strict compliance with the terms of this lease at any time, even if it has previously  delayed acting on Resident's breach of this lease.   Management shall have sole discretion in granting and withholding permission or consent for Resident to perform his or her obligations under this lease in any manner that varies from the contractual requirements.  Management at its option may  condition, modify, or revoke any such permission or consent upon reasonable written notice and insist upon strict compliance with the lease terms.

21.     Fees and Expenses of Litigation.   In a civil action or dispossessory proceeding for breach of this lease, the prevailing party shall be entitled  to attorney's fees in the amount of fifteen percent (15%) of the principal and interest owing and all expenses of litigation, including, but not limited to,  court costs and administrative filing fees for evictions.  All sums due from Resident to Managment which are in default shall bear interest at the rate of  twelve percent (12%) per annum.

22.     Notices.   All notices must be written, dated, and signed.  The notice must be given personally or by certified mail, return receipt requested.   Notice shall be sent to Resident at the apartment and to Management at the apartment community business office. See Par. 9 with regard to the proper  address for service of lawsuits.

Resident shall send notices for repairs, service, maintenance, non-renewal, military transfers, and lease termination to the Management/leasing  office located at the apartment community.

Resident shall provide Management with Resident's updated contact and address information and forwarding address at anytime requested during  the lease and at the time of vacating the apartment.  Resident shall provide Management with: the address of his or her new residence (where they are living); the mailing address for returning any security deposit or forwarding any notices or move-out inspection and estimate of damages and cleaning fees  that exceed normal wear and tear; the name, address, and phone number of their employer; the name, address, and phone number of a person or  family member who can provide updated contact information; the Resident's cell phone and e-mails.  If Resident fails to provide his or her contact information and address at the time of vacating; conceals or attempts to conceal his or her address and location; moves from the State of Georgia; or cannot be located  by Management, then the statute of limitation for collecting any account or money owed by Resident shall be tolled until such time as Resident  provides proper notification of his address and other contact information requested.

RESIDENT'S NOTICE OF NON-RENEWAL UNDER PARAGRAPH 6 OR NOTICE OF INTENT TO VACATE AND TERMINATE THE LEASE EARLY  UNDER PARAGRAPH 7 MUST BE IN WRITING AND MUST BE GIVEN SO THAT THE ENDING DATE IS ON THE LAST DAY OF A CALENDAR MONTH.  VERBAL NOTICES ARE NOT EFFECTIVE AND MAY NOT BE RELIED UPON BY RESIDENT UNDER ANY CIRCUMSTANCES.  MILITARY SERVICE MEMBERS MAY GIVE A NOTICE TO TERMINATE AS PROVIDED IN PAR. 7 AT ANY TIME OF THE MONTH.  NO MANAGEMENT EMPLOYEE IS AUTHORIZED TO VERBALLY OR UNILATERALLY WAIVE ANY NOTICE REQUIREMENT, AND RESIDENT MAY NOT RELY ON A VERBAL STATEMENT OF MANAGEMENT THAT PROPER WRITTEN NOTICE IS NOT NECESSARY.   MANAGEMENT MAY, BUT IS NOT REQUIRED TO, WAIVE  THE REQUIREMENT THAT NOTICES BE EFFECTIVE ONLY AS OF THE END OF A CALENDAR MONTH.

23.     Repairs.   Resident accepts the apartment "as is" and in habitable condition suited for residential purposes. Resident accepts full control and responsibility of the apartment leased premises and agrees to maintain the apartment in a clean, safe, and sanitary condition.  Management will make repairs to the apartment with reasonable promptness upon receipt of written notice from Resident.  Management's repair obligations under Georgia landlord/tenant law only pertain to the apartment, and not to the common areas of the apartment community. Resident agrees and acknowledges that he or she only leased the apartment and that Resident's and Resident's occupants, family, and social guests access to amenities and common areas of the apartment community are only a permissive license to use such amenities and common areas.

Resident shall pay as additional rent for any cleaning or damages exceeding normal wear and tear to the premises caused by Resident or caused by Resident's occupants, family, social guests, invitees or licensees of the Resident and occupants that exceed normal wear and tear.  Resident and Resident's occupants, family, social guests, and invitees shall not damage any portion of the leased premises or apartment community, and Resident is responsible for the cost to repair, replacement cost, and all expenses required to repair or replace the equipment, building, or property damaged.  Resident is liable to and shall indemnify, defend, and hold harmless Management and the apartment owner for any damages or repairs caused by  Resident or Resident's occupants, family, social guests, and invitees.  Resident shall promptly pay as additional rent with the next month's rent the costs of any  repairs, replacement, or damages caused by Resident or Resident's occupants, family, social guests, or invitees upon issuance of an invoice from Management.

Resident may not alter the interior or exterior structure of the apartment or apartment community in any manner without the express written consent of Management. Please see Par. 9 with regard to Management's policy on disability modification requests.

Resident must promptly report the need for any repairs to Management in writing before Management is obligated to make any repairs.  Resident must promptly report any dampness, water leaks, or mold in the apartment to Management.   Resident shall properly use the heating, ventilation, and air conditioning (HVAC) system to maintain temperate conditions so as to prevent freezing of water pipes in cold weather and to prevent mold growth or excessive humidity during warm weather.  Resident is required to use air conditioning during June, July, August, and September and shall not turn off the air conditioning and open windows for purposes of cooling the apartment.  Resident must inspect any fire alarm and fire extinguisher at least once  per month to determine whether they are in proper working condition and report to Management the need for any need for repair or replacement.  Resident shall promptly notify Management of any damage to or malfunction of any door or window locks or intrusion alarm.

Resident must promptly report any evidence, knowledge, or suspected presence of bed bugs in the apartment and cooperate with Management to allow inspection and treatment of the same. Adjoining or neighboring Residents to an apartment infested with bed bugs must cooperate with Management in inspection and treatment to prevent a possible cross infestation or migration.

24.     Abandonment.   Resident shall not abandon the apartment, Resident's personal property, or motor vehicles.  Title to any abandoned  property (including, but not limited to, pets or animals) shall vest in Management. Management may store, sell, or dispose of abandoned property without notice.

If Resident abandons the apartment or his or her personal property contained therein, Management shall have the right to re-key, re-enter, and re-let the apartment without filing a dispossessory warrant or obtaining a writ of possession.  Management is not required to file a dispossessory proceeding in order to recover an abandoned apartment or to dispose of any abandoned property found in an abandoned apartment.  Management shall have sole  discretion in determining whether the Resident has abandoned the apartment.  Circumstances indicative of an abandonment include, but are not limited to, Resident's unexplained absence or failure to occupy the apartment; the overall appearance and condition of the apartment; Resident's statement that he or she is moving or leaving the apartment community; failure to pay rent or utilities; discontinuance of utility service; failure to respond to  Management's notices, communications, or eviction proceedings; or removal of a substantial amount of Resident's personal property.

25.     Attornment, Sale, Foreclosure, Renovation, and Former Employees.   Resident's rights, or, if applicable, his employment with Management,  are subordinate to any deed to secure debt, sale, or contract for sale of the property.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

**011520160081106**

In the event the apartment community or any portion or building of the community is foreclosed, sold, placed under contract to be sold, or scheduled for substantial renovation, rehabilitation, or demolition, either Management or the new owner shall have the right to terminate the lease on 30 days' written notice.  In the event that Management elects to terminate the occupancy or lease under this provision, then during the 30 day period immediately preceding either the termination date of Resident's occupancy or the termination of the lease, the Resident's rent shall be reduced by fifty percent (50%); however, if the Resident shall hold over beyond the termination date, then Resident shall owe the full rent due for said 30 day notice period plus hold over rent as provided in paragraph 12.

If Resident is an employee of Management and his or her employment is terminated, then this employee lease shall also terminate, any employee rental discounts shall end, and the employee agrees to vacate the premises if requested.  If permitted to stay, the former employee shall pay the current market rate rent as specified by Management at the time employment is terminated.

26. Default by Resident.  Resident's violation of this lease or any addenda constitutes a default.  Violations constituting a default include, but are not limited to: unauthorized occupants; non-payment of rent; improper non-renewal or termination of the lease as required by paragraphs 6 or 7;  abandonment of the apartment as prohibited in paragraph 24; providing false or misleading information in the rental application; failure to pay or continue utility service as required in paragraph 10; allowing unauthorized persons access in violation of paragraph 12; any unauthorized occupants or improper use or conduct in violation of paragraph 14; or causing damages or cleaning in excess of normal wear and tear.

Upon default, Management may terminate Resident's lease or right of possession by giving written notice and re-entering the apartment as provided by law.  Notice to cure a default is not required but, if given, shall not waive Management's right to terminate or insist on strict compliance.  Resident shall surrender possession of the premises to Management promptly on the effective date of any termination notice, remove all possessions and persons occupying the apartment, return all keys to Management by personally handing them to a Management representative, and restore Management to quiet possession of the leased premises.

Notwithstanding Management's termination due to Resident's default, Resident shall remain liable for all rent, hold-over rent under paragraph 12, liquidated damages (if applicable) as provided below, unpaid utilities, rental concession, lost discounts or pay-backs, damages exceeding normal wear and tear, costs of eviction, attorney's fees and expenses of re-letting incurred by Management as a result of Resident's default.

Management, at its option, may obtain possession of the apartment through a dispossessory proceeding, either with or without first terminating the lease or right of possession.  Management, at its option, may also recover possession of an abandoned apartment without filing a dispossessory proceeding by changing the locks and disposing of any abandoned property.

Notwithstanding termination of the lease, commencement of a dispossessory proceeding, issuance of a writ of possession, actual physical eviction, or recovery of the abandoned premises, Resident shall remain liable for all rent accrued through the date on which possession is obtained by Management; rent through the remainder of the lease term or liquidated damages (if applicable) as provided in this paragraph; damages exceeding normal wear and tear; unpaid utilities; rental concession, lost discounts or pay-backs; costs fees, and expenses.  Neither issuance of a writ of possession, actual physical eviction, or retaking possession of the apartment shall relieve Resident of liability for rent through the end of the lease term or liquidated damages (if applicable) under this paragraph.  All rent, fees, damages and liquidated damages (if applicable) shall be due immediately upon demand for payment.

In the event of a default by Resident, the Resident shall be liable to Management for rent through the remainder of the lease term as follows.  Management may either allow the apartment to remain vacant and hold Resident liable for payment of rent through the remaining term of the lease; sue the Resident for breach of the lease and for each installment of rent as it comes due through expiration of the lease; or re-enter the premises as provided by law and re-let the apartment on Resident's behalf while holding the Resident liable for any deficiency between the contract rent and rent received through the remaining term of the lease until the re-letting.  Management has the right, but not the obligation, to attempt to re-let the premises on Resident's behalf.

In the event that Resident has breached or defaulted the lease and failed to terminate the lease properly as provided by law or as provided for in Paragraphs 6 or 7 of this Apartment Rental Contract, then Resident shall be liable to Management for unpaid rent due through the remainder of the lease term under this paragraph (Par. 26), and not as provided in Paragraph 7, and Management is not entitled to collect any termination (cancellation) fee or notice fee.

Liquidated  Damages  In Lieu  of Rent Through  the Remainder  of the  Lease  Term.  Management shall not be entitled to Liquidated damages unless the Liquidated Damages Addendum has been signed by Management and Resident to indicate that the parties desire to use liquidated damages in determining the amount of rent due through the remainder of the lease term in the event of Resident's default.  In the event the parties have selected liquidated damages for determining Resident's liability due to Resident's breach, then the Liquidated Damages Addendum is incorporated herein by reference, and the parties shall execute the same as a separate addendum.

Management's re-entry to leased premises either under judicial process or by retaking possession after abandonment or surrender shall not relieve Resident of liability for payment of rent through the remainder of the lease term or liquidated damages (if applicable) that landlord is entitled to collect under the terms of this rental agreement.

Management shall have the right to terminate the lease or right of possession of any Resident or occupant of the apartment who is arrested, indicted, charged, or convicted of any felony, crime of violence, or threatened violence; robbery; theft; dishonesty; rape; child molestation; sexual offense; illegal sale, use, or possession of drugs; illegal use or possession of a weapon; stalking; arson; criminal damage to property; vandalism; issuance of bad  checks; fraud; forgery; or any other crime which could adversely affect the health, safety, or welfare of other Residents or Management staff, regardless of whether the offense occurred on or off the apartment community premises and regardless of when the offense occurred.  Management shall have the right to file a dispossessory action and obtain a writ of possession based on the Resident's or occupant's conduct which constitutes a criminal violation without waiting for a criminal adjudication, finding, or decision on the criminal charges.

Management shall have the right to terminate the lease of any Resident whose apartment is found to be infested with bed bugs; have a mold or water intrusion problem; be unfit for habitation; or constitute a hazard to health, safety, or welfare of any person, the apartment, the apartment community or management employees.  Upon such termination, resident must promptly vacate, remove all personal property and possessions, and return possession of the apartment to Management.

27.  Privacy,  Disclosure,  and  Consent.  Resident agrees that information about him or her that is known to Management or contained in his or her Resident file is not confidential, privileged or private.  Resident authorizes Management to disclose any information known or contained in the Resident file to any law enforcement agencies who request such information either with or without a subpoena; to prospective landlords or lenders who request such information in connection with approval of any rental application or home purchase; or to persons or parties who make a request for such information using discovery procedures in a civil action or subpoena in a criminal proceeding.

Resident agrees that the apartment owner and Management shall have the right to provide information from its account and business records to any Consumer Reporting Agency to be included in the Resident's consumer file and credit history, including, but not limited to, rental history, rental  payments, unpaid balances, and other information.  If the Resident disputes the accuracy of the information provided, the Resident shall notify the Consumer Reporting Agency and send written notice of the dispute to Management at the address specified in Par. 9.  When giving notice to Management of any dispute as to the accuracy of adverse rental information, rental payments, disputed account balance, or other disputed information, Resident agrees to

provide his or her correct names on the lease, the apartment number, complete apartment address, dates of occupancy, and clear details as to the basis of such dispute that the Consumer Reporting Agency and Management will have sufficient information to investigate, evaluate and respond to the dispute.

Resident agrees that Management shall have the right to pursue collection of any sums alleged due from Resident through employment of independent contractors as collectors and that such sums may be reported to any consumer reporting agency (credit bureau) and shown on Resident's credit report. Resident agrees that variances or inaccuracies in the amounts submitted for collection or reported to any credit bureaus do not constitute a violation of any federal or state laws pertaining to reporting or collection of such debts and that the amount alleged due may be amended or corrected at any time. Resident agrees that Management or any such collector or collection agency is expressly authorized to contact Resident by phone or mail to notify Resident of the debt or attempt collection of the same and to communicate with third parties regarding the existence of the debt, the location of the Resident, or the Resident's ability to pay the debt.  Resident agrees that Management or any such collector is expressly authorized to obtain a consumer report (credit report) on Resident and to obtain information on Resident's location and employment in connection with the collection of any amounts claimed due under this lease.  Management's and collector's rights under this paragraph shall continue and survive independently beyond expiration or termination of the lease or Resident's occupancy of the apartment.

Resident(s), their occupants, family members, and social guests herby authorize and grant Management, their contractor(s), employee(s), and or any third parties hired by Management, permission to take, use, and publish photographs and/or videos of Resident(s), their occupants and social guests, including but not limited to, their minor children, at events and/or activities in the common areas of the apartment community.  Management is permitted to use such photographs or video for print, publication, copyright, online social media and video-based marketing materials, as well as any other form of publication or use at Management's sole discretion.  Resident(s), their occupants and social guests, including their minor children, release and hold harmless Management from any reasonable expectation of privacy or confidentiality associated with the images and videos taken and used by Management. Resident(s) and their occupants, family members, and social guests acknowledge and agree they will not receive any type of financial compensation, ownership or royalties with the taking, use, marketing, or publication of any photographs or videos.

28.    Definitions.   The term "Resident' includes all tenants or other persons who signed or are obligated under the lease. "His" shall also mean "her"  when applicable.  "Resident" refers to the tenant.  The term "Management" may refer to the owner of the apartment community or to the managing agent who is under a Management contract to operate the apartment community on behalf of the owner.  The legal ownership entity is different from the Management entity.   The owner's managing agent may or may not have any ownership interest in the apartment community and may be an entirely independent contractor which operates the apartment community for the owner for a fee.  "Occupants" are persons who are living in the apartment rental with the Resident and disclosed in the lease but have not signed the lease.  The term "occupants" means persons who did not sign the lease but were disclosed and authorized to live in the apartment on a full time basis.  Occupants could include family members of the Resident, but is not limited to family members, and includes roommates or other persons who are authorized to live in the apartment as disclosed in this lease.  "NSF" means checks that are dishonored or returned by the bank unpaid, and is also referred to as "not sufficient funds." "Skip" means to vacate or abandon the leased premises in violation of this lease, either with or without turning in all keys and either with or without removing all personal property. "Notice period" refers to the length of time required in paragraph 6 or 7 or any other provision before a notice can take effect.  The word "lease" means the Apartment Rental Contract which creates the relationship of landlord and tenant between the Resident and Management.  "Leased premises" refers to the apartment Resident rented, and is also referred to as the "premises" or "lease premises," but does not include any of the common areas or other portions of the apartment community  property. The term "leased premises" does not include any portions of the apartment community outside of the apartment rental unit as the Resident only has a permissive license to use the other areas and amenities of the apartment community in conjunction with the rental of the apartment.  "Termination date" is the date following a notice period or the date on which Resident's lease or right of possession terminates as specified either in a non-renewal notice or a lease termination notice from Management based on Resident's default. A "social guest" is any person who is present in the Resident's apartment or on the apartment community property by express or implied invitation of the Resident or Resident's occupants, other social guests, or family members  and includes anyone temporarily living or visiting Resident.  The term "social guest" includes, but is not limited to, visitors and family members visiting or present in the apartment or apartment community. An "invitee" refers to a business guest or visitor who is present in the apartment or the apartment community with the express or implied invitation of the Resident for the purpose of conducting or soliciting business with or for the Resident, occupants, or social guests of the Resident. The "trade name" is the name of the apartment community and is the name or alias under which the legal owner of record does business and operates the apartment community.  A "default" or "breach" of the lease and addenda means a violation of the lease provisions and gives Management the right to terminate the Resident's occupancy or lease.  "GREC" means the Georgia Real Estate Commission.

29.    Usufruct.   This lease only creates the relationship of landlord (Management) and tenant (Resident) and does not create any ownership or transferable rights in real estate.  This lease is a "usufruct," and not an estate for years.

30.    Entire Agreement.   This lease, any referenced addenda, and any addenda separately signed or referring to the lease or apartment shall constitute the entire agreement between the parties, and no prior negotiations, representations, or oral statements are binding.  This lease may not be modified except with the express written consent of Management.  The Resident is legally obligated under the terms and conditions of any addenda which he or she signed, and the same are part of and incorporated by reference into this lease.

31.    Joint and Several Liability.   Each person, corporation, or roommate who signs this lease or any guarantor under a separate guarantor's agreement is jointly and severally liable for all rent or other charges which come due.  Management may look to any Resident or guarantor for payment of all or a part of any obligation due without first suing or attempting to collect from any other responsible party.  Management and the owner or any collection agency or attorney representing the owner or Management shall have the right to settle in whole or part all or a portion of any debt owed by one Resident without releasing or waiving its claim for the balance of the debt against another Resident, co-signor, or guarantor.  Settlement or release of one Resident or Guarantor shall not release the other Resident or Guarantor from liability for the debt owed.

32.    Agency Disclosure.   Management is acting on behalf of the owner of the apartment community in exchange for compensation.

33.    Know Your Neighbors.   Certain individuals convicted of certain sex-related crimes are required to register their name and current address on an index maintained by the state or county in which they reside.  You may access that index in order to determine whether any such individuals live in proximity to a certain location.  The public may access the internet to view all sex offenders registered in Georgia.  The Statewide Sex Offender Register can be obtained through the Internet at http://gbi.georgia.gov/georgia-sex-offender-registry.  The public may also contact the local Sheriff to to view a list of the sex offenders listed in their county.

34.    Special Stipulations.   Any special stipulations specified in Par. 34 shall control and supersede and control over conflicting provisions in the text of this lease.

Copyright © 10/2015 - Atlanta Apartment Association, Inc. - Form # 1301
All Rights Reserved

011520160081108          Page 8 of 8     

# EXHIBIT B

| Judgment | BL1 | **Judgment** | | Docket #<br>**16D80802** | Amount<br>**$1097** | Status<br>**Filed** |
|---|---|---|---|---|---|---|
| | | Court name<br>**DEKALB CO STATE COURT/DE KALB GA** | | Filed<br>**06/09/2016** | | Status date<br>**09/16** |
| | | Comments | | | | |
| | | **Plaintiff: EAST PERIMETER POINTE Defendant: MS CHRISTA MCLAURIN** | | | | |

| Judgment | BL1 | **Judgment** | | Docket #<br>**17D15798** | Amount<br>**$1188** | Status<br>**Filed** |
|---|---|---|---|---|---|---|
| | | Court name<br>**DEKALB CO STATE COURT/DE KALB GA** | | Filed<br>**07/06/2017** | | Status date<br>**09/17** |
| | | Comments | | | | |
| | | **Plaintiff: EAST PERIMETER POINTE Defendant: MS CHRISTA MCLAURIN** | | | | |

View Document - 16D80602 -

Pages: 2

_____ MOTION TO STRIKE    _____ JUDGMENT ON PLEADINGS    _____ TRIAL

**IN THE MAGISTRATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

East Perimeter Pointe

Plaintiff(s)                                      Civil Action No. 16D 80602

vs.

Christa McLaurin
w/ all others

Defendant(s)

**ORDER AND JUDGMENT**

The above case having regularly come on before the Court without a jury, the Defendant having

[ ]  appeared for trial        [X]  failed to appear for trial        Default @ 10:07 Am

and the Court having heard and considered evidence, pleadings and testimony, finds that the Plaintiff is entitled to a WRIT OF

POSSESSION and judgment.

**ORDERED AND ADJUDGED that a WRIT OF POSSESSION be issued:**

(X)  On   June 9 2016

( )  Upon Defendant's failure to pay Plaintiff $ _____ on or before _____ and

**FURTHER ORDERED that:**

(X  Plaintiff recover judgment against Defendant   Christa McLaurin

in the amount of $  1,077.00 (rent accruing to  June 9 2016 ), plus court costs

6.50

and interest at ☑2% per annum as shall accrue hereafter.

(☒) In the event that the Defendant files a Notice of Appeal, and at the time of filing the Notice of Appeal, the Defendant shall pay into the registry of the Court $ 1097.90 as the sum found by the trial court to be due for rent. In addition the Defendant shall pay $ 705.00 beginning Jul 5, 20 16 and by the 5th of each month thereafter. Upon default of any payment, a Writ of Possession Shall Issue Instanter.

**ALL PAYMENTS ARE TO BE IN CASH, CERTIFIED CHECK OR MONEY ORDER made payable to**

**The Magistrate Court of DeKalb County.**

The Court further finds:

This ____9____ day of ____Jan____, 2016.

PRESENTED BY: _____

_____ Judge/Magistrate Court of DeKalb County

**Judge Gary J Leshaw**

Attorney for Plaintiff _____

Consented to by: _____

FILED IN THIS OFFICE THIS ____9th____ DAY OF
_____

**Deputy Clerk, Magistrate Court of DeKalb County**

magdispojudg2006rev

# EXHIBIT C

_____MOTION TO STRIKE          _____JUDGMENT ON PLEADINGS          _____TRIAL

61

## IN THE MAGISTRATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

East Perimeter Pointe

_____          Civil Action No. ___17D15798___

Plaintiff(s)

vs.

Christa McLaurin
             in all others

_____

Defendant(s)

### ORDER AND JUDGMENT

The above case having regularly come on before the Court without a jury, the Defendant having

[X]   appeared for trial          [ ]   failed to appear for trial

and the Court having heard and considered evidence, pleadings and testimony, finds that the Plaintiff is entitled to a WRIT OF

POSSESSION and judgment.

**ORDERED AND ADJUDGED that a WRIT OF POSSESSION be issued:**

( X )   On _____July 13, 2017_____

(  )   Upon Defendant's failure to pay Plaintiff $_____ on or before _____ and

**FURTHER ORDERED that:**

( X )   Plaintiff recover judgment against Defendant ___Christa McLaurin___

in the amount of $ _1188_ (rent accruing to __July 13    2017__ ), plus court costs

and interest at 12% per annum as shall accrue hereafter. 6.25%

( X )   In the event that the Defendant files a Notice of Appeal, and at the time of filing the Notice of Appeal, the Defendant

shall pay into the registry of the Court $ _1188_ as the sum found by the trial court to be due for rent.

In addition the Defendant shall pay $ _705_ beginning __August 5__, 2017 and by the

5th of each month thereafter. Upon default of any payment, a Writ of Possession Shall Issue Instanter.

### ALL PAYMENTS ARE TO BE IN CASH, CERTIFIED CHECK OR MONEY ORDER made payable to
### The Magistrate Court of DeKalb County.

The Court further finds:

_____

_____

This _6_ day of _July_ 2017

PRESENTED BY:                          Judge Cornell A. Stephens

_____          _____
Attorney for Plaintiff                Judge, Magistrate Court of DeKalb County

Consented to by: _____

                          FILED IN THIS OFFICE THIS _6_ DAY OF

                          _____July_____, 2017

                          _____
                          Deputy Clerk, Magistrate Court of DeKalb County

magdispojudg2006rev

# EXHIBIT D

From: Christa Joelchelle McLaurin

Address-----------------

SS #-----------------------

DOB-----------------------

Today's Date------------------

This letter is being sent to multiple addresses. See the attached page for a list of addresses that this is being sent to.

Re: False National Credit Systems Trade Line showing up on my credit report for $2,293 because of a tenancy at East Perimeter Point Apartments.

Dear Company,

1- The National Credit Systems Trade Line showing up on my credit report for $2,293 is false.
2- I obtained the attached statement from National Credit Systems for an itemization of the amount due, but it is false.
3- I did live at East Perimeter Point Apartments from January 2016 until July 2017.
4- There were numerous instances when I was sued for not paying rent during my tenancy.
5- However, the rent was always paid except at the end of my tenancy.
6- Despite the rent always being paid, on June 9, 2016, East Perimeter Pointe obtained a judgment against me for $1,097 for rent which was paid. See attached.
7- This judgment must be marked satisfied and paid and removed from Court records as it is preventing me from obtaining a mortgage.
8- Another judgment was entered on July 6, 2017 for $1,188 and while I dispute that judgment, I understand that a judge has determined that I owe that money.
9- I spoke with National Credit Systems and they have said that the balance that they claim I owe is in addition to the judgments.

10-    (As noted, the $1,097 judgment is false because it was paid).

11-    Going through the itemization and showing why it is false, I state the following:

      1-  There is no $1,455 rent owed because I moved out of the apartment with the consent of the landlord on July 12, 2017 and the judgment encompasses all charges owed from my tenancy. Besides, my rent is $705 a month and there is no way I owe $1,455.

      2-  As explained, the judgment encompassed all charges that I owed from the tenancy therefore there should be no $100 late fee.

      3-  I dispute the $150 cleaning charge and I was not notified about it

      4-  The $85 key charge is false because my lease only allows a $50 key charge.

      5-  The other is nonsense because I don't know what the charge is and I can't be charged a charge for something I don't know what it is.

      6-  All the additional charges are false.

      7-  Further, I was not notified about any of these charges after my tenancy until now and I therefore cannot be charged for them.

      8-  Lastly, I provided a $200 security deposit which is owed to me.

## Conclusion

Please completely remove the National Credit Systems Tradeline from my credit report as it is false. And please mark the 2016 judgment entered against me as entered in error or satisfied or paid and not outstanding.

I am trying to obtain a mortgage and if this is not done, I intend to sue you under all federal and state laws for the aggravation and harm this is causing my credit.

Thank you,

_____

To:

Equifax Information Services, LLC
P.O. Box 740256
Atlanta, GA  30374-0256

Experian
P.O. Box 4500
Allen, TX 75013

TransUnion Consumer Solutions
P.O. Box 2000
Chester, PA 19016

National Credit Systems, Inc.
P.O. Box 312125
Atlanta, GA 31131

National Credit Systems, Inc.
3750 Naturally Fresh Blvd.
Atlanta, GA 30349

East Perimeter Pointe Apartments
4946 Snapfinger Woods Drive
Decatur, GA 30035

East Perimeter Pointe Apartments
2210 Sullivan Rd
College Park, GA 30337

Michael Scaljon
Ventron Management, LLC
2210 Sullivan Rd
Atlanta, GA 30337

_____ MOTION TO STRIKE          _____ JUDGMENT ON PLEADINGS          _____ TRIAL

## IN THE MAGISTRATE COURT OF DEKALB COUNTY
### STATE OF GEORGIA

East Perimeter Pointe

_____

Plaintiff(s)                                            Civil Action No. __17D15798__

vs.

Christa McLawin
          ndialldry

_____

Defendant(s)

### ORDER AND JUDGMENT

The above case having regularly come on before the Court without a jury, the Defendant having

[X] appeared for trial          [ ] failed to appear for trial

and the Court having heard and considered evidence, pleadings and testimony, finds that the Plaintiff is entitled to a WRIT OF POSSESSION and judgment.

**ORDERED AND ADJUDGED that a WRIT OF POSSESSION be issued:**

( X ) On _____ July 13, 2017 _____

( ) Upon Defendant's failure to pay Plaintiff $_____ on or before _____ and

**FURTHER ORDERED that:**

( X ) Plaintiff recover judgment against Defendant _____Christa McLawin_____
in the amount of $__1188__ (rent accruing to ___July 13   2017___ ), plus court costs
and interest at 12% per annum as shall accrue hereafter.

( X ) In the event that the Defendant files a Notice of Appeal, and at the time of filing the Notice of Appeal, the Defendant shall pay into the registry of the Court $____1188____ as the sum found by the trial court to be due for rent. In addition the Defendant shall pay $___705___ beginning ___August 5___, 2017 and by the 5th of each month thereafter. Upon default of any payment, a Writ of Possession Shall Issue Instanter.

**ALL PAYMENTS ARE TO BE IN CASH, CERTIFIED CHECK OR MONEY ORDER** made payable to
**The Magistrate Court of DeKalb County.**

The Court further finds:

_____

This __6__ day of ___July___ 2017
PRESENTED BY:                              _____ 2017

_____          **Judge Cornell A. Stephens**
Attorney for Plaintiff                    Judge, Magistrate Court of DeKalb County

Consented to by: _____

FILED IN THIS OFFICE THIS __6__ DAY OF
_____ July _____, 2017.
_____
Deputy Clerk, Magistrate Court of DeKalb County

magdispojudg2006rev

View Document - 16D80602 -

Pages: 2

_____ MOTION TO STRIKE   _____ JUDGMENT ON PLEADINGS   _____ TRIAL

JC

HO

IN THE MAGISTRATE COURT OF DEKALB COUNTY

STATE OF GEORGIA

East Perimeter Pointe

Plaintiff(s)

Civil Action No. 16 D 80602

vs.

Christa McLawin
w/ all others

Defendant(s)

**ORDER AND JUDGMENT**

The above case having regularly come on before the Court without a jury, the Defendant having

[ ]   appeared for trial   [X]   failed to appear for trial   Default @ 10:07 Am

and the Court having heard and considered evidence, pleadings and testimony, finds that the Plaintiff is entitled to a WRIT OF

POSSESSION and judgment.

**ORDERED AND ADJUDGED that a WRIT OF POSSESSION be issued:**

(X) On _____ June 9 2016

( ) Upon Defendant's failure to pay Plaintiff $ _____ on or before _____ and

**FURTHER ORDERED that:**

(X) Plaintiff recover judgment against Defendant _____ Christa McLawin

in the amount of $ 1,077.00 (rent accruing to _____ June 9 2016 ), plus court costs

6.50

and interest at ☒% per annum as shall accrue hereafter.

( ☒ )   In the event that the Defendant files a Notice of Appeal, and at the time of filing the Notice of Appeal, the Defendant shall pay into the registry of the Court $ 1097.90 as the sum found by the trial court to be due for rent. In addition the Defendant shall pay $ 705.00 beginning Jul 5, 20 16 and by the 5th of each month thereafter. Upon default of any payment, a Writ of Possession Shall Issue Instanter.

**ALL PAYMENTS ARE TO BE IN CASH, CERTIFIED CHECK OR MONEY ORDER made payable to**

**The Magistrate Court of DeKalb County.**

The Court further finds:

This ___9___ day of ___Jan___, 20 16.

PRESENTED BY:

_____
Attorney for Plaintiff

Consented to by: _____

_____ Judge/Magistrate Court of DeKalb County

**Judge Gary J Leshaw**

FILED IN THIS OFFICE THIS ___ DAY OF _____

**Deputy Clerk, Magistrate Court of DeKalb County**

magdispojudg2006rev

This document itemizes the charges assessed by the original creditor, which were provided to National Credit Systems, Inc. at the time the account was submitted for collection.

## EAST PERIMETER POINTE APTS

4946 SNAPFINGER WOODS DRIVE OFC
DECATUR, GA 30035

| | | |
|---|---|---|
| **RESIDENT:** MCLAURIN, CHRISTA | | |
| **Move-Out Date:** 8/2/2017 | **Unit:** 2914 | 3651510 |

### Itemized Account Statement

**Charges:**

| | |
|---|---|
| Rent Owed: | $1,455.00 |
| Late Charges: | $100.00 |
| NSF Fees: | $ 0.00 |
| Utility Charges: | $ 0.00 |
| Lease Termination: | $ 0.00 |
| Insufficient Notice Fee: | $ 0.00 |
| Attorney Fee: | $ 0.00 |
| Dispossessory Fee: | $ 0.00 |
| Warrant Fee: | $ 0.00 |
| Eviction Fee: | $ 0.00 |
| Cleaning Charges: | $150.00 |
| Damages: | $ 0.00 |
| Key Charge: | $85.00 |
| Concession Payback: | $ 0.00 |
| Other: | $ 9.00 |

**Additional Charges**

| | |
|---|---|
| Unit Amenities Premi | $12.00 |
| Water Utility Reimbu | $50.00 |
| Late Fee- Utility | $35.00 |
| Collection Administr | $76.00 |
| Court Fee for Evicit | $124.00 |
| Pest Control Reimbur | $5.00 |
| Trash Utility Reimbu | $7.00 |
| Unit Amenities Premi | $100.00 |
| Water Utility Reimbu | $50.00 |
| Late Fee- Utility | $35.00 |

| | |
|---|---|
| Payments / Credits: | $ 0.00 |
| Deposit Applied: | $ 0.00 |

| | |
|---|---|
| **Total Amount Owed :** | **$2,293.00** |